CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
5/18/2023
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| OCEAN 10 SECURITY LLC, | CASE NO. 6:22-cv-00007 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| LYNCHBURG REDEVELOPMENT AND HOUSING AUTHORITY, | JUDGE NORMAN K. MOON |
| *Defendant.* | |

Ocean 10 seeks damages from Lynchburg Redevelopment and Housing Authority ("LRHA") for voiding their security services contract. Ocean 10 and LRHA have filed cross-motions for summary judgment. Ocean 10 also moves to exclude testimony of LRHA's expert, Steven Siegler. For the following reasons, the Court will grant in part and deny in part Ocean 10's motion for partial summary judgment, will deny LRHA's motion for partial summary judgment, and will deny Ocean 10's motion to exclude.

## Background

Ocean 10 is the manufacturer of the TSUNAMI system, an advanced, mobile security camera surveillance system. Dkt. 17 ¶¶ 9–10. Ocean 10 leases TSUNAMI systems to customers and provides them with security services, such as installation, maintenance, repairs, and upgrades. Dkt. 31 at 3. A TSUNAMI system is mounted on a telephone pole and includes several cameras that provide constant, real-time, high-resolution, and a 360-degree view of the surrounding area. Dkt. 17 ¶¶ 10–11.

1

LRHA oversees the public housing program in Lynchburg and owns and operates four public housing communities. *Id.* ¶¶ 5–6. It is a political subdivision of Virginia and is considered a "public body" as defined by the Virginia Public Procurement Act ("VPPA"). Dkt. 35 at 3.[1]

In 2019, Ocean 10 and LRHA's then-Facilities and Development Manager, Robert Bennett, discussed over email the TSUNAMI system's capabilities, their placement at LRHA premises, customer references, and what security services Ocean 10 could provide to LRHA. Dkts. 31-8, 31-9. In June 2019, Ocean 10 sent Bennett a sample subscription contract for his review. Dkt. 31-10.

In July 2019, LRHA sent its first purchase order to Ocean 10 requesting three TSUNAMI 360 surveillance system leases and three power kits. Dkt. 31-11. It sent three additional purchase orders to Ocean 10 in July and September of 2019. Dkt. 31-12 at 1; Dkt. 31-13 at 1; Dkt. 31-14 at 1. Ocean 10 attached estimates to the Phase 1 purchase orders, which provided the quantity, the rate, and the amount for the TSUNAMI leases and power kits. Dkt. 31-11 at 3; Dkt. 31-12 at 2; Dkt. 31-13 at 2. The estimates also provided that LRHA would lease TSUNAMI systems for a three-year minimum with unlimited warranty and a Verizon 4G data plan. *Id.* The purchase orders with the attached estimates are collectively referred to as Phase 1 purchase orders. LRHA's then-Executive Director, Fagan, approved these purchase orders by emailing "Approved . . . D." Dkt. 31-15. In total, the Phase 1 purchase orders amounted to LRHA leasing twelve TSUNAMI systems and associated security services for three years. Dkt. 31-12 at 1; Dkt. 31-13 at 1; Dkt. 31-14 at 1.

---

[1] The VPPA defines a "public body" as "any legislative, executive or judicial body, agency, office, department, authority, post, commission, committee, institution, board or political subdivision created by law to exercise some sovereign power or to perform some governmental duty, and empowered by law to undertake the activities described in this chapter." Va. Code. § 2.2-4201.

In September 2019, LRHA sent Ocean 10 a signed Notice to Proceed, instructing Ocean 10 to install the TSUNAMI systems from the Phase 1 purchase orders on LRHA premises. Dkt. 31-16. Ocean 10 installed the TSUNAMI systems leased under the Phase 1 purchase orders. Dkt. 31-2 at 9.

In January 2020, Ocean 10 sent a finalized contract for leasing TSUNAMI systems and for the associated security services to LRHA. Dkt. 31-17. LRHA then-Facilities and Development Manager, Bennett, responded and asked if he could receive separate invoices for each LRHA property with TSUNAMI cameras. *Id.* at 1. In that same month, LRHA paid Ocean 10 $88,800.00 for its first-year subscription and installation costs under the Phase 1 purchase orders. Dkt. 31-18. LRHA never returned a signed finalized contract to Ocean 10. Dkt. 31 at 7.

In April 2020, LRHA then-Facilities and Development Manager, Bennett, emailed Ocean 10 to request quotes for installing additional TSUNAMI systems on LRHA's properties. Dkt. 31-19 at 3. Bennett also emailed Ocean 10 asking that the quotes include license plate recognition cameras. Dkt. 31-20.

In late April 2020, LRHA issued four purchase orders to Ocean 10 for twelve TSUNAMI 360 surveillance system subscriptions, four license plate recognition cameras, and the installation costs for these items. Dkt. 31-22. Each order had an attached estimate that provided the quantity, the rate, and the amount of the TSUNAMI subscriptions and license plate recognition cameras. *Id.* at 2, 5, 8, 11. The estimates also provided that LRHA would lease the TSUNAMI systems for a three-year minimum and that each annual subscription included full warranty, a maintenance plan, a Verizon 4G data plan, and routine technology upgrades. *Id.* This set of purchase orders with the attached estimates is referred to as Phase 2 purchase orders. LRHA's then-Interim Executive Director, WJ Sydnor, approved the Phase 2 purchase orders via email. Dkt. 31-24. On

August 5, 2020, LRHA paid Ocean 10 $104,500.00 for its first-year subscription and installation costs under the Phase 2 purchase orders. Dkt. 31-25.

In January 2021, Ocean 10 emailed LRHA that the $78,000 payment for the second-year subscription under Phase 1 purchase orders was due. Dkt. 31-26 at 1, 4–5. The newly hired LRHA's Executive Director, Mary Mayrose, responded that she had received the "blank contract form" and Ocean 10's "billing invoice for services for the upcoming 12-month period" and that she had authorized a payment for the first three months of the second-year subscription under the Phase 1 purchase orders. *Id.* at 1. She asked that Ocean 10, "[p]lease do not cancel our service." *Id.* In February 2021, LRHA made a partial payment of $19,500.00. *Id.* LRHA did not make any other payments to Ocean 10. Dkt. 31 at 9.

In April 2021, Ocean 10 sent a Notice of Non-Payment to LRHA, stating that $58,500 remained due under the Phase 1 purchase orders and that this balance "needs to be remitted in order to continue service." Dkt. 31-27. In this Notice, it also stated that the invoices under the Phase 2 purchase orders would be due in August 2021. *Id.* at 1.

On April 15, 2021, the LRHA Board of Commissioners held a regular meeting. Dkt. 31-1. During that meeting, the Board went into a closed meeting under Virginia Code § 2.2-3711(A)(8)[2] to discuss a legal matter with counsel. *Id.* at 3. Immediately after the closed meeting, the Board voted unanimously to void LRHA's security services contract with Ocean 10 "for not being in the public interest." *Id.* at 4. During Mayrose's deposition, she explained LRHA evaluated what was in the public's best interest based on cost and procurement issues. Dkt. 31-3

---

[2] Virginia Code § 2.2-3711(A)(8) permits a public body to hold a closed meeting for "[c]onsultation with legal counsel employed or retained by a public body regarding specific legal matters requiring the provision of legal advice by such counsel."

at 29. She explained that "[t]he remaining time on the contract was too expensive for LRHA." *Id.* at 30.

After the Board meeting, LRHA's counsel sent Ocean 10 a letter informing it that the Board had declared LRHA's contract with Ocean 10 void under the VPPA. Dkt. 31-28 at 1. The letter also stated, "[t]he services under this contract will be procured through a competitive procurement as require[d] by HUD procurement procedures and the VPPA. Ocean 10 is welcome to participate in this procurement." *Id*. LRHA never engaged in procurement procedures. Dkt. 31-3 at 30.

In July 2021, Ocean 10 removed the TSUNAMI systems from LRHA's premises. Dkt. 31-2 at 101–02. After waiting approximately ten months for LRHA to issue a procurement offering, Ocean 10 used most of the removed TSUNAMI systems on its property and donated a few of the removed systems to family members and the Asheville Police Department for three to six months. Dkt. 35-2 at 104–108. Ocean 10 did not lease or sell any of these systems. *Id.* at 109.

In the Amended Complaint, Ocean 10 seeks to recover damages and lost profits for breach of contract, to appeal LRHA's final decision denying its claim for a wrongful termination pursuant to Virginia Code § 2.2-4363, and alternatively, if LRHA lawfully voided its contract under the VPPA, to recover its cost of performance up to the time LRHA declared the contract void. Dkt. 17 ¶¶ 37–55.

## Cross-Motions for Partial Summary Judgment

### A. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable [fact finder] could return a verdict for the nonmoving party," and "[a]

fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

The moving party bears the burden of establishing that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant may not rest on allegations in the pleadings; rather, it must present sufficient evidence such that a reasonable fact finder could find by a preponderance of the evidence for the non-movant. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

When cross-motions for summary judgment are before a court, a court must "consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N.C. DOT*, 762 F.3d 374, 392 (4th Cir. 2014) (internal quotation marks omitted).

### B. Ocean 10's Motion for Partial Summary Judgment

Ocean 10 moves for partial summary judgment, arguing that LRHA should be found liable for the breach and that the issue of damages should be resolved at trial. Dkts. 34, 35. It specifically claims that the facts undisputedly show that a contract existed between LRHA and Ocean 10, that LRHA breached it before the end of its term by voiding it, and that LRHA failed to properly void it under the VPPA. Dkt. 39 at 1–2. To establish a breach of contract claim in Virginia, Ocean 10 must show (1) a legally enforceable obligation of LRHA to Ocean 10; (2)

6

LRHA's violation or breach of that obligation; and (3) injury or damage caused to Ocean 10 from the breach. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).[3]

As to the first element, both parties agree, and the record undisputedly shows that, a valid contract existed between LRHA and Ocean 10. The parties, however, dispute the terms of this contract. At the summary judgment hearing, Ocean 10 argued that the mutually agreed upon contract terms are memorialized in the unsigned finalized contract. Dkt. 31-17. In contrast, LRHA contended that the contract terms are set by the purchase orders. In light of this dispute, the Court considers Virginia law to determine whether the record as a matter of law shows the binding contract terms between the parties.

Under Virginia's Statute of Frauds, any agreement that cannot be performed within a year—such as the one here—must be in writing, contain the essential terms of the agreement, and be signed by the party to be charged or its agent. Va. Code § 11-2(8); *Reynolds v. Dixon*, 46 S.E.2d 6, 8 (Va. 1948) ("The memorandum relied upon to take the contract out of the operation of the statute must contain the essential terms of the agreement."). Any modification to a contract that is required to be in writing under Virginia's Statute of Frauds must also be in writing and signed by the party to be charged or its agent. *Lindsay v. McEnearney Assocs., Inc.*, 531 S.E.2d 573, 576 (Va. 2000).

Additionally, Virginia strictly adheres to the parol evidence rule. *Amos v. Coffey*, 320 S.E.2d 335, 337 (Va. 1984); *Erlich v. Hendrick Const. Co.*, 225 S.E.2d 665, 668 (Va. 1976) (noting the rule "has nowhere been more strictly adhered to in its integrity than in Virginia"). This rule provides that "where an agreement is complete on its face, is plain and unambiguous in

---

[3] Both parties agree that Virginia law applies to this contract dispute. *See* Dkt. 31 at 2; Dkt. 35 at 15.

its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Globe Iron Const. Co. v. First Nat. Bank of Bos.*, 140 S.E.2d 629, 633 (Va. 1965). In effect, "where parties have reduced their contract to a writing which imposes a legal obligation in clear and explicit terms the writing shall be the sole memorial of that contract, and it is conclusively concluded that the writing contains the whole contract, and is the sole evidence of the agreement." *Pulaski Nat. Bank v. Harrell*, 123 S.E.2d 382, 387 (Va. 1962).

Under this rule, "[p]arol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional written instrument." *Shevel's, Inc.-Chesterfield v. Se. Assocs., Inc.*, 320 S.E.2d 339, 343 (Va. 1984). However, this rule has "well-recognized exceptions." *Id.* at 343–44 (summarizing exceptions to the rule). One of these is the doctrine of partial integration, which applies when "the entire agreement has not been reduced to writing, parol evidence is admissible, not to contradict or vary its terms but to show additional independent facts contemporaneously agreed upon, in order to establish the entire contract between the parties." *Renner Plumbing, Heating & Air Conditioning, Inc. v. Renner*, 303 S.E.2d 894, 898 (1983) (internal quotation marks omitted). Another exception is whether the language of the written instrument is ambiguous. *Amos*, 320 S.E.2d at 337. "An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." *Id.* (internal quotation marks omitted).

Here, Ocean 10 sent LRHA a sample subscription contract for review in June 2019, which LRHA never signed. Dkt. 31-10. In July and September of 2019, LRHA sent Phase 1 purpose orders, which listed the quantity of the TSUMANI systems and power kits, the lease term, the prices of services and items leased, and the total amount owed by LRHA. Dkts. 31-11,

8

31-12, 31-13. These were signed and approved by LRHA's then-Executive Director, Fagan, when she emailed "Approved . . . D." Dkt. 31-15.[4] At that time, LRHA and Ocean 10 had a valid contract based on the terms in the purchase orders that complied with the statute of frauds because it was in writing, signed by the charged party's agent, and contained the essential elements of a contract. Va. Code § 11-2(8); *Reynolds*, 46 S.E.2d at 8. The prior unsigned sample subscription contract is inadmissible under the parol evidence rule because the purchase orders are "complete on [their] face" and "plain and unambiguous in [their] terms." *Globe Iron Const. Co.*, 140 S.E.2d at 633; *see Amos*, 320 S.E.2d at 337.

In September 2019, LRHA sent Ocean 10 a signed Notice to Proceed, instructing Ocean 10 to install the TSUNAMI systems on LRHA premises. Dkt. 31-16. Because this notice was provided in writing and signed by LRHA's agent, this properly modified the contract and added terms about installation to their contract. *See Lindsay*, 531 S.E.2d at 576.

In January 2020, Ocean 10 sent a finalized contract for leasing TSUNAMI systems and for the associated security services to LRHA. Dkt. 31-17. Because LRHA never returned a

---

[4] LRHA's Executive Director's approval of the Phase 1 and Phase 2 purchase orders by email is sufficient to comply with Virginia's Statute of Fraud's signature requirement. *See Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 297 (7th Cir. 2002) (finding that an email message with no electronic signature and the name line on an email with the electronic content of the email satisfied the signature requirement for purposes of the Article 2 Statute of Frauds); *see also Roger Edwards, LLC. v. Fiddes & Son, Ltd.*, 245 F. Supp. 2d 251, 261 (D. Me. 2003), *aff'd in part, dismissed in part sub nom.*, 387 F.3d 90 (1st Cir. 2004). There is no suggestion that LRHA's Executive Director lacked authority to make representations on behalf of LRHA or that LRHA did not intend to bind itself to the purchase orders. The record supports that LRHA intended to comply with the contract by issuing a Notice to Proceed for Ocean 10 to install the security equipment on its property and by making some payments for the security services and for leasing the TSUNAMI systems. Considering that LRHA's Executive Director approved the purchase orders by email, that the record shows LRHA intended to enter into a contract for security services with Ocean 10, and that LRHA, by counsel, agrees that the purchase orders set the binding contract terms, the Phase 1 and Phase 2 purchase orders satisfy the requirements of Virginia's Statute of Frauds.

signed copy of this contract, it fails to comply with Virginia's statute of frauds and does not properly modify the Phase 1 purchase orders contract. *See* Va. Code § 11-2(8); *Reynolds*, 46 S.E.2d at 8; *Lindsay*, 531 S.E.2d at 576.

In April 2020, LRHA issued Phase 2 purchase orders to Ocean 10. Dkt. 31-22. LRHA's then-Interim Executive Director, WJ Sydnor, approved the Phase 2 purchase orders via email. Dkt. 31-24. Phase 2 purchase orders thus properly modified and expanded the contract terms set by the Phase 1 purchase orders.[5] *See Lindsay*, 531 S.E.2d at 576.

Accordingly, the record shows as a matter of law that the binding contract terms between Ocean 10 and LRHA were set by the Phase 1 and Phase 2 purchase orders and LRHA's Notice to Proceed. Dkts. 31-11, 31-12, 31-13, 31-16, 31-22.[6] The unsigned sample subscription contract and finalized contract do not provide binding contract terms between the parties.

After determining the binding contract terms between LRHA and Ocean 10, the Court next considers whether LRHA breached this contract. "A material breach is a failure to do

---

[5] Phase 2 purchase orders may be viewed as a separate contract between Ocean 10 and LRHA, which complied with the statute of frauds because it was in writing, was signed by LRHA's agent, and contained the essential terms of the agreement. However, neither party argues that they had two contracts and instead argue they had *one* security services agreement. Because the parties agree they had one contract, it is appropriate to view the Phase 2 purchase orders as a modification to the Phase 1 purchase orders contract.

[6] This contract is also valid and enforceable. The VPPA states that "[a]ll public contracts with nongovernmental contractors for . . . the purchase of services . . . shall be awarded after competitive sealed bidding, or competitive negotiation as provided in this section, unless otherwise authorized by law." Va. Code Ann. § 2.2–4303(A). While the security services contract here was not awarded after a competitive sealed bidding or negotiation, the Supreme Court of Virginia has explained that "to hold that the state may enter into a valid contract and yet retain the power to avoid its obligation would entail an obvious contradiction." *Wiecking v. Allied Med. Supply Corp.*, 391 S.E.2d 258, 260 (Va. 1990) (internal quotation marks omitted) (noting that the sovereign immunity doctrine has never been extended "to actions based upon valid contracts entered into by duly authorized agents of the government"). LRHA therefore could not avoid liability under its contract with Ocean 10 simply because it failed to comply with the VPPA procedural requirements for awarding the services contract.

something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Horton v. Horton*, 487 S.E.2d 200, 204 (Va. 1997). Ocean 10 claims that LRHA materially breached the contract by failing to pay its full annual subscription payment for the remaining terms on both Phase 1 and Phase 2 purchase orders and for voiding the contract before its three-year subscription ended. Dkt. 31 at 14. It is undisputed that LRHA voided the contract during the April 15th Board meeting; however, LRHA argues that it lawfully voided the contract under the VPPA.

The VPPA permits a public body to void existing contract awards under certain conditions. It provides in relevant part:

> B. If prior to an award it is determined that the decision to award is arbitrary or capricious, then the sole relief shall be a finding to that effect. The public body shall cancel the proposed award or revise it to comply with the law. If, after an award, it is determined that an award of a contract was arbitrary or capricious, then the sole relief shall be as hereinafter provided.
>
> Where the award has been made but performance has not begun, the performance of the contract may be enjoined. Where the award has been made and performance has begun, the public body may declare the contract void upon a finding that this action is in the best interest of the public. Where a contract is declared void, the performing contractor shall be compensated for the cost of performance up to the time of such declaration. In no event shall the performing contractor be entitled to lost profits.

Va. Code. § 2.2-4360(B).

At the motion to dismiss stage, this Court advanced that the statute "require[d] the [public body] to decide if the award of the contract was arbitrary and capricious, and *then* decide whether voiding it is in the best interest of the public." Dkt. 19 at 7. However, upon further review of this provision within the VPPA, the Court concludes that Virginia Code § 2.2-4360(B) does not require a public body to make a finding of arbitrary or capricious as precursory to voiding a contract when it finds that doing so will be in the public's best interest.

The language in the first paragraph of § 2.2-4360(B) providing—" [i]f, after an award, it is determined that an award of a contract was arbitrary or capricious"—refers to a determination by a fact finder after a public body voids a contract. This interpretation is supported by the VPPA's statutory language and structure. Section 2.2-4360(B) is located under Article 5 of the VPPA. In Article 5, "it is determined" language, the same language noted above in § 2.2-4360(B), elsewhere refers to determinations made by a public body in an administrative proceeding or a court when reviewing a public body's action or decision. *See, e.g.*, Va. Code § 2.2-4357(B) ("If, upon appeal, it is determined that the action taken was arbitrary or capricious . . ."); *id.* § 2.2-4358(C) ("If, upon appeal, it is determined that the decision refusing withdrawal of the bid was not . . ."); *id.* § 2.2-4359(B) ("If, upon appeal . . ., it is determined that the decision of the public body was not . . .").

By contrast, § 2.2-4360, the provision at issue here, explicitly states when a public body may or must make a decision or finding. For instance, § 2.2-4360(A) provides that "[t]he *public body* . . . shall issue a decision in writing within ten days stating the reasons for the action taken." And § 2.2-4360(B) states that "[t]he *public body* shall cancel the proposed award or revise it to comply with the law" and that "the *public body* may declare the contract void." In short, the Virginia General Assembly in Article 5 uses "it is determined" language for determinations following an appeal of a public body's decision and explicitly states when "the public body" may or must make a decision or finding. Thus, because § 2.2-4360(B) contains no mention of "the public body" being required or permitted to determine that a contract award was arbitrary or capricious before voiding it, the Court concludes this determination is to be decided by a fact finder after a public body voids a contract.

Accordingly, a public body may void a contract if it finds that doing so is in the public's best interest. Va. Code § 2.2-4360(B) (providing "the public body may declare the contract void upon a finding that this action is in the best interest of the public"). Once a public body has voided a contract, the extent of its damages for voiding this contract after performance has begun is based on whether a fact finder determines that the contract award was arbitrary or capricious. *Id.* (providing "[i]f, after an award, it is determined that an award of a contract was arbitrary or capricious, then the sole relief shall be as hereinafter provided"). Thus, if a fact finder finds that the contract award is arbitrary or capricious, the "sole relief" for the performing party is "cost of performance up to the time" the public body declared the contract void. *Id.* The performing party cannot recover any lost profits. *Id.* ("In no event shall the performing contractor be entitled to lost profits."). However, if a fact finder concludes that the contract award was not arbitrary or capricious, the performing party may recover under Virginia law as if the public body had breached the contract. The party may recover any damages proven at trial, including lost profits.

Here, the Board unanimously voted to void Ocean 10's contract with LRHA "for not being in the public interest" during the April 15th meeting, which is permitted under Virginia Code § 2.2-4360(B). Dkt. 31-1 at 4. The record, however, contains a genuine dispute of material fact as to whether LRHA's contract with Ocean 10 was arbitrary or capricious. *See Variety Stores, Inc.*, 888 F.3d at 659. LRHA claims that "LRHA's procurement of TSUNAMI Systems from Ocean 10 was done in violation of numerous provisions contained in the VPPA and regulations imposed by HUD." Dkt. 37 at 10. Because a jury might conclude that the contract was arbitrary or capricious based on these alleged violations, the issue of whether the security services contract was arbitrary or capricious will be decided by the jury at trial.

Such a determination will affect the extent of Ocean 10's damages. If the jury finds that the contract was arbitrary or capricious, Ocean 10 may only recover damages for the cost of performance until the contract was voided on April 15, 2021. If the jury concludes that the contract was not arbitrary or capricious, Ocean 10 will be entitled, if proven at trial, to any damages, including loss profits, less mitigation. For these reasons, Ocean 10's motion for partial summary judgment will be granted in part and denied in part.

### C. Defendant's Motion for Partial Summary Judgment

LRHA moves for partial summary judgment, arguing (1) that Ocean 10's claims of breach of contract and administrative denial are barred under the VPPA because it lawfully voided the contract and (2) that it is entitled to its affirmative defense of Ocean 10's failure to mitigate damages. As to its first issue, LRHA was permitted to void the contract under the VPPA, but the issue of whether the contract was arbitrary or capricious will be decided by the jury at trial for the reasons discussed above.

As to its second issue, mitigation of damages is an affirmative defense under Virginia law. *See Monahan v. Obici Med. Mgmt. Servs., Inc.*, 628 S.E.2d 330, 336 (Va. 2006). When a breach occurs, the breached party has "the duty of making reasonable efforts to mitigate damages resulting from the breach, and to the extent that the [breached party] fails to do so, [it] may not recover the additional damages incurred." *Forbes v. Rapp*, 611 S.E.2d 592, 595 (Va. 2005). LRHA has the burden of proving that Ocean 10's failure to mitigate was unreasonable. *Id.* at 596.

The record reflects a genuine dispute of material fact on whether Ocean 10 failed to reasonably mitigate its damages. LRHA's evidence shows that the removed TSUNAMI systems had substantial value and could have been sold or leased. Ocean 10, however, claims that the

14

removed systems had no value. Considering these factual contentions, the question of what amount Ocean 10 could have reasonably mitigated its damages is a question for the jury. Accordingly, Defendant's motion will be denied.

### Ocean 10's Motion to Exclude Expert Testimony

**A. Legal Standard**

A witness who qualifies as an expert "by knowledge, skill, experience, training, or education, may testify" as to scientific, technical, or other specialized knowledge if it will assist the trier of fact. Fed. R. Evid. 702. Such testimony is only admissible if (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case." *Id.*

The Supreme Court in *Daubert* concluded that Rule 702 entrusts district courts with a gatekeeping responsibility "to 'ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597). If the expert meets this threshold, criticisms of his testimony will go to its weight, not its admissibility. *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195–96 (4th Cir. 2017). The approach is not limited to scientific testimony but rather to all "testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire*, 526 U.S. at 141 (applying *Daubert* to the testimony of a mechanical engineer).

Although Rule 702 allows for a liberal introduction of relevant expert evidence, courts "must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 595).

### B. Discussion

Ocean 10 moves to exclude testimony of LRHA's expert, Steven Siegler. Dkt. 32. LRHA retained Mr. Siegler to provide an appraisal of the TSUNAMI systems and its components. Dkt. 38-2 at 3. In his report, he concluded that the fair market value of the twenty-four TSUNAMI systems leased by LRHA is $86,216.78. *Id.* In making his conclusion, he valued four components of a TSUNAMI system, applied a 25% or 50% reduction to the component's marketplace price, and then multiplied that number times the number of components used in the twenty-four TSUNAMI systems. *See id.* He did not account for the value of other components in a TSUNAMI system including camera licenses, armor plating, heating and cooling components, computer systems, internet connectivity components, and transmission components. *Id.*

Ocean 10 first argues that Mr. Siegler's appraisal is irrelevant since this case is about a services agreement, not a sale of goods agreement. Dkt. 33 at 5. Expert testimony must be relevant to be admissible. Relevant evidence is "evidence that helps the trier of fact to understand the evidence or to determine a fact in issue." *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (internal quotation marks and citation omitted); Fed. R. Evid. 401. Here, Mr. Siegler's appraisal of TSUNAMI systems and its components is relevant to LRHA's defense that Ocean 10 failed to reasonably mitigate its damages. Because Ocean 10 has admitted that it did not lease or sell the removed TSUNAMI systems, LRHA claims that Ocean 10 could have mitigated its damages by selling the systems or selling components of the systems to offset any potential damages. Dkt. 38 at 11. His expert testimony thus is relevant because it will help the jury determine whether Ocean 10 failed to reasonably mitigate its damages, and if so, by how much they failed to do so.

Ocean 10 next argues that Mr. Siegler's analysis is not "the product of reliable principles and methods." Dkt. 33 at 8. Ocean 10 argues that Siegler's application of a 25% or 50%

16

reduction to four components he appraised is unreliable and that his method lacks reliability because he only considered four components of a TSUNAMI system to determine the fair market value for an entire TSUNAMI system. *Id.* at 14.

This argument fails. Even though Mr. Siegler did not appraise every component of a TSUNAMI system, his opinions were based on reliable principles and methods. He used the Uniform Standards of Professional Appraisal Practice ("USPAP"), which is a universally applied methodology for property valuation, and relied on his forty years of experience in providing valuations of personal property.[7] *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (stating "'the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience'") (quoting Fed. R. Evid. 702, Advisory Comm.'s Note). Accordingly, because his opinions are reliable and relevant and thus admissible under *Daubert*, Ocean 10's disputes with his expert testimony go to the weight, rather than its admissibility. *See Bresler*, 855 F.3d at 195–96; *Daubert*, 509 U.S. at 596 (noting "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible evidence").

## Conclusion

For the reasons above, the Court will grant in part and deny in part Ocean 10's motion for partial summary judgment, Dkt. 30, will deny LRHA's motion for partial summary judgment,

---

[7] The Court also rejects Ocean 10's argument that Mr. Siegler needed to physically inspect the TSUNAMI systems. Dkt. 33 at 8; *see Milazzo v. Elite Contracting Grp., Inc.*, No. 1:19-cv-1607, 2022 WL 479900, at *4 (E.D. Va. Jan. 14, 2022) (providing that "nothing in *Daubert* mandates in-person inspections"). Ocean 10's concern about him failing to physically inspect the cameras goes to the weight of his testimony, rather than its admissibility. *See Bresler*, 855 F.3d at 195–96.

17

Dkt. 34, and will deny Ocean 10's motion to exclude, Dkt. 32. In summary, the Court holds as a matter of law that LRHA and Ocean had a security services contract and that the binding terms of this contract are provided in the purchase orders and LRHA's Notice to Proceed. The issue of whether the contract was arbitrary or capricious and the issue of damages will be resolved at trial.

    The Clerk of Court is directed to send this Memorandum Opinion to all counsel of record. Entered this 18th day of May, 2023.

*Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE